# SUPREME COURT OF THE UNITED STATES

## JANE DOE *v.* FACEBOOK, INC.

### ON PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF TEXAS

No. 21–459.   Decided March 7, 2022

The petition for a writ of certiorari is denied.

Statement of JUSTICE THOMAS respecting the denial of certiorari.

In 2012, an adult, male sexual predator used Facebook to lure 15-year-old Jane Doe to a meeting, shortly after which she was repeatedly raped, beaten, and trafficked for sex. Doe eventually escaped and sued Facebook in Texas state court, alleging that Facebook had violated Texas' anti-sex-trafficking statute and committed various common-law offenses. Facebook petitioned the Texas Supreme Court for a writ of mandamus dismissing Doe's suit. The court held that a provision of the Communications Decency Act known as §230 bars Doe's common-law claims, but not her statutory sex-trafficking claim.

Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U. S. C. §230(c)(1). The Texas Supreme Court emphasized that courts have uniformly treated internet platforms as "publisher[s]" under §230(c)(1), and thus immune, whenever a plaintiff's claim "'stem[s] from [the platform's] publication of information created by third parties.'" *In re Facebook, Inc.*, 625 S. W. 3d 80, 90 (Tex. 2021) (quoting *Doe* v. *MySpace, Inc.*, 528 F. 3d 413, 418 (CA5 2008)). As relevant here, this expansive understanding of publisher immunity requires dismissal of claims against internet companies for failing to warn consumers of product defects or failing to take reasonable

steps "to protect their users from the malicious or objectionable activity of other users." 625 S. W. 3d, at 83. The Texas Supreme Court acknowledged that it is "plausible" to read §230(c)(1) more narrowly to immunize internet platforms when plaintiffs seek to hold them "strictly liable" for transmitting third-party content, *id.*, at 90–91, but the court ultimately felt compelled to adopt the consensus approach, *id.*, at 91.

This decision exemplifies how courts have interpreted §230 "to confer sweeping immunity on some of the largest companies in the world," *Malwarebytes, Inc.* v. *Enigma Software Group USA, LLC*, 592 U. S. ___, ___ (2020) (slip op., at 1) (statement of THOMAS, J., respecting denial of certiorari), particularly by employing a "capacious conception of what it means to treat a website operator as [a] publisher or speaker," *id.*, at ___ (slip op., at 8) (internal quotation marks omitted). Here, the Texas Supreme Court afforded publisher immunity even though Facebook allegedly "knows its system facilitates human traffickers in identifying and cultivating victims," but has nonetheless "failed to take any reasonable steps to mitigate the use of Facebook by human traffickers" because doing so would cost the company users—and the advertising revenue those users generate. Fourth Amended Pet. in No. 2018–69816 (Dist. Ct., Harris Cty., Tex., Feb. 10, 2020), pp. 20, 22, 23; see also Reply Brief 3, n. 1, 4, n. 2 (listing recent disclosures and investigations supporting these allegations). It is hard to see why the protection §230(c)(1) grants publishers against being held strictly liable for third parties' content should protect Facebook from liability for its *own* "acts and omissions." Fourth Amended Pet., at 21.

At the very least, before we close the door on such serious charges, "we should be certain that is what the law demands." *Malwarebytes*, 592 U. S., at ___ (slip op., at 10). As I have explained, the arguments in favor of broad immunity under §230 rest largely on "policy and purpose," not

on the statute's plain text. *Id.*, at \_\_\_ (slip op., at 4). Here, the Texas Supreme Court recognized that "[t]he United States Supreme Court—or better yet, Congress—may soon resolve the burgeoning debate about whether the federal courts have thus far correctly interpreted section 230." 625 S. W. 3d, at 84. Assuming Congress does not step in to clarify §230's scope, we should do so in an appropriate case.

Unfortunately, this is not such a case. We have jurisdiction to review only "[f]inal judgments or decrees" of state courts. 28 U. S. C. §1257(a). And finality typically requires "an effective determination of the litigation and not of merely interlocutory or intermediate steps therein." *Market Street R. Co.* v. *Railroad Comm'n of Cal.*, 324 U. S. 548, 551 (1945). Because the Texas Supreme Court allowed Doe's statutory claim to proceed, the litigation is not "final." Conceding as much, Doe relies on a narrow exception to the finality rule involving cases where "the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings." *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 480 (1975). But that exception cannot apply here because the Texas courts have not yet conclusively adjudicated a personal-jurisdiction defense that, if successful, would "effectively moot the federal-law question raised here." *Jefferson* v. *City of Tarrant*, 522 U. S. 75, 82 (1997).

I, therefore, concur in the Court's denial of certiorari. We should, however, address the proper scope of immunity under §230 in an appropriate case.